DAVID R. ZARO (BAR NO. 124334)
MATTHEW D. PHAM (BAR NO. 287704)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        mpham@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Plaintiff
KRISTA FREITAG, Receiver

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA FREITAG, Court-appointed permanent receiver for ANI Development, LLC, American National Investments, Inc., and their subsidiaries and affiliates,<br><br>Plaintiff,<br><br>vs.<br><br>2BUDZ HOLDING, LLC, an Arizona limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No. '22CV0885 L    BGS<br><br>**COMPLAINT FOR FRAUDULENT TRANSFER** |

Plaintiff Krista Freitag (the "<u>Receiver</u>" or "<u>Plaintiff</u>"), the Court-appointed permanent receiver for ANI Development, LLC, American National Investments, Inc., and their subsidiaries and affiliates (collectively, the "<u>Receivership Entities</u>"), hereby brings the following complaint against the above-captioned Defendants and alleges, on behalf of the Receivership Entities, as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action arises from a common nucleus of operative facts as, and is substantially related to the original claims in, the Securities and Exchange Commission's (the "<u>Commission</u>") enforcement action styled as *Securities and Exchange Commission v. Gina Champion-Cain, et al.*, United States District Court, Southern District of California, Case No. 3:19-cv-01628-LAB-AHG (the "<u>SEC Action</u>").

2.      This Court may exercise personal jurisdiction over the above-captioned Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and 28 U.S.C. §§ 754 and 1692.

3.      Venue in the Southern District of California is proper under 28 U.S.C. section 1391 because this action is an ancillary proceeding to the SEC Action and because the Receiver was appointed in this District pursuant to the *Order; Granting the Parties' Joint Motion and Stipulated Request by All Parties for a Preliminary Injunction Order and Order (1) Freezing Assets; (2) Requiring Accountings; (3) Prohibiting the Destruction of Documents; and (4) Appointing a Permanent Receiver* entered by this Court in the SEC Action on September 3, 2019 (the "<u>Appointment Order</u>").

## II.     PARTIES

4.      The Receiver is the duly appointed permanent receiver for the Receivership Entities pursuant to the Appointment Order.  Among other things, the Appointment Order calls for the Receiver to recover and marshal, for the benefit of

creditors of and investors in the Receivership Entities, any and all assets which were owned, leased, occupied, or otherwise controlled by the Receivership Entities or were otherwise purchased with assets of the Receivership Entities.  The Receiver holds exclusive authority and control over the assets of the Receivership Entities, including over the causes of action alleged herein, over which this Court has ancillary and supplemental jurisdiction.

5. On information and belief, defendant 2Budz Holding, LLC ("Defendant") is an Arizona limited liability company based in the City of Glendale, Arizona, and is the recipient of assets of the Receivership Entities as described further herein.

6. The Receiver is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of Does 1 through 10.  The Receiver is informed and believes, and based thereon alleges, that each fictitiously named defendant is the recipient of fraudulently transferred funds from the Receivership Entities, or was in some way responsible for, participated in or contributed to the matters and things of which the Receiver complains herein, and in some fashion, has legal responsibility therefor.  When the exact nature and identity of such fictitious defendants' responsibility for, participation in and contribution to the matters and things herein alleged is ascertained, the Receiver will seek to amend this Complaint and all proceedings herein to set forth the nature of these defendants' identity.

7. The Receiver is informed and believes, and based thereon alleges, that Does 1 through 10, are principals, officers and/or agents of each of the other Defendants, and directed, ratified, or caused the conduct and/or omissions alleged in this Complaint.  The Receiver is further informed, and on that basis alleges, that Does 1 through 10 are the alter egos of the other Defendants, and as such are liable for the conduct and damages alleged against the other Defendants herein.

## III. FACTUAL ALLEGATIONS

### A. The Purported Business of the Receivership Entities and the Commencement of the SEC Action.

8. Since 2011, Gina Champion-Cain ("Champion-Cain") and ANI Development, LLC ("ANI Development"), the entity she controlled, raised approximately $390 million from approximately 435 unique investors nationwide. When raising those investor funds, Champion-Cain and ANI Development claimed to be offering investors an opportunity to make short-term, high-interest loans to parties seeking to acquire California alcohol licenses.

9. Under California state law, liquor license applicants are required to place into an escrow consideration equal to the license purchase price while their application remains pending with the State. Champion-Cain solicited investors by informing them that this regulatory requirement presented an investment opportunity. She primarily directed investors to deposit their money into specified escrow accounts, and represented to them that their funds were being loaned to liquor license applicants at a high interest rate to help the applicants meet California's escrow requirements. Champion-Cain often showed investors lists of purported pending liquor license applications that required financing. She also provided investors with escrow agreements, ostensibly executed between ANI Development and its escrow company, Chicago Title Company, which provided that investors' principal would be kept safe in an escrow account, and that once the underlying liquor license transfer had been approved, it would then be returned to the investors with interest. These representations were materially false and misleading, and ANI Development's stated business was a sham.

10. In actuality, the Receivership Entities did not finance the transfer of liquor licenses with money it was raising from investors for an investment profit. Instead, the purported liquor license applicants and the escrow agreements Champion-Cain and ANI Development provided to their investors were often

fabricated. Instead, Champion-Cain had unfettered access to and control over the investor funds that were supposedly being held in escrow by Chicago Title Company. With that control, Champion-Cain transferred significant amounts of investor funds to American National Investments, Inc. and other entities controlled by Champion-Cain. Champion-Cain also used much of the funds fraudulently raised from investors to pay fictitious returns to earlier investors in the scheme. Thus, Champion-Cain operated a classic Ponzi scheme.

11. On or about August 28, 2019, the Commission initiated the SEC Action against Champion-Cain and ANI Development, alleging violations of federal securities laws. The Commission petitioned for the Receiver's appointment, and on September 3, 2019, this Court entered an order appointing the Receiver as the permanent receiver for the Receivership Entities.

### B. The Receiver's Authority and Investigation Pursuant to Her Appointment.

12. Pursuant to the terms of her appointment, the Receiver is vested with exclusive authority and control over the assets of the Receivership Entities. Specifically, Article X of the Appointment Order vests the Receiver with the "full powers of an equity receiver, including, but not limited to . . . full power to sue . . . and take into possession all [receivership] property."

13. The Receiver's investigation to date supports and confirms the Commission's allegations in the SEC Action, including that Champion-Cain operated a Ponzi scheme by convincing investors that she would use their money to make high interest loans to individuals and entities attempting to purchase California liquor licenses.

### C. Criminal Indictment and Guilty Pleas.

14. Champion-Cain was charged with conspiracy, securities fraud, and conspiracy to commit securities fraud and obstruction of justice. *United States v. Gina Champion-Cain*, S.D. Cal. Case No. 20-CR-02115-AJB. Champion-Cain

agreed to waive indictment and plead guilty to all three counts. On July 22, 2020 and in connection with Champion-Cain's guilty plea, the United States filed a plea agreement signed by Champion-Cain (the "Plea Agreement") stating that the "Factual Basis" section of the Plea Agreement was true. The Plea Agreement is attached hereto as **Exhibit A**. On March 31, 2021, Champion-Cain was sentenced to fifteen years in prison.

15. The Factual Basis set forth in the Plea Agreement is fully incorporated herein by reference. The facts stated therein are included in this complaint as though fully restated and alleged herein.

### D.  The Fraudulent Transfers to Defendant From the Receivership Entities.

16. Upon the Receiver's appointment, the Receiver promptly moved to secure control over Champion-Cain's offices, assets, and operations, including her electronic and physical records and data. Pursuant to the Court's orders in the SEC Action, the Receiver performed, among other things, a forensic accounting ("Accounting") of the Receivership Entities' sources and uses of funds, which includes but is not limited to the amounts invested or deposited with the Receivership Entities by investors (directly or indirectly) and the amounts distributed or paid out to investors, aggregators, insiders, and other third parties by the Receivership Entities (directly or indirectly). The Receiver completed and filed the Accounting in April of 2021.

17. On October 30, 2020, the Receiver also sought approval from the Court to pursue claims under the California Uniform Voidable Transactions Act against those persons and entities who received amounts from the Receivership Entities without providing reasonably equivalent value in exchange. On December 18, 2020, the Court entered an order granting the Receiver's request and approving the proposed procedures.

18. As a result of the Accounting, the Receiver determined that Defendant was a losing investor who should be allowed a claim of $79,204, having invested or deposited the sum of $1,512,454 in the Receivership Entities while receiving the sum of $1,433,250 from the Receivership Entities. Accordingly, in the SEC Action, the Receiver has sought for Defendant's claim to be allowed in the amount of $79,204 in connection with the claims allowance process.

19. However, Defendant has taken the position that its claim should be increased by $737,546 to $816,750 based on the argument that certain transfers made by the Receivership Entities to Defendant totaling $750,000, along with one payment from Defendant to the Receivership Entities in the amount of $12,454, should be excluded from the calculation of its claim.

20. In other words, the Receiver and Defendant have a dispute over whether that $737,546 should be taken into account when calculating Defendant's claim. In the event that the $737,546 is included in the calculation of Defendant's claim as part of the claims allowance process (i.e., Defendant's claim is allowed at $79,204), the Receiver will dismiss this complaint, but in the event that the $737,546 is excluded (i.e., Defendant's claim is allowed at $816,750), the Receiver is entitled to assert a claim under the California Uniform Voidable Transactions Act against Defendant for the $737,546 and does so at this time in light of any applicable statute-of-limitations defenses.

21. At issue are two transfers that Defendant received from the Receivership Entities totaling $750,000. Specifically, (a) on or about June 19, 2018, the Receivership Entities transferred to Defendant the sum of $500,000 (the "First Transfer"), and (b) on or about August 6, 2018, the Receivership Entities transferred to Defendant the sum of $250,000 (the "Second Transfer," and together, with the First Transfer, the "Transfers").

22. On information and belief, in exchange for the Receivership Entities making the Transfers to Defendant, the Receivership Entities received an equity

interest in Defendant (the "Equity"), but the value of the Equity received by the Receivership Entities was significantly less than $750,000.

23. On information and belief, Defendant's business was in investing in other companies operating in the marijuana industry. However, at the time the Receivership Entities made the Transfers to Defendant, one of Defendant's investments was its $1,500,000 investment in the fictitious liquor license loan program made in May 2017.

24. On information and belief, at the time of the Transfers, Champion-Cain was aware, but unconcerned, that the value of the Equity received by the Receivership Entities was nowhere close to $750,000. Champion-Cain knew that 2Budz had invested $1,500,000 in the Ponzi scheme Champion-Cain was operating, but Champion-Cain nevertheless caused the Receivership Entities to make the Transfers to Defendant in order to lure a principal of Defendant, Wade Wakefield ("Wakefield"), into making further investments into the Ponzi scheme.

25. Champion-Cain's ruse worked as Wakefield, through the entity Wakefield Investments, LLC, invested an additional $2,000,000 in the Receivership Entities at approximately the same time the Receivership Entities made the First Transfer to Defendant.

26. On information and belief, the only return on investment that the Receivership Entities received on account of the Equity was a $12,454 distribution that was made by Defendant on or about April 25, 2019.

## COUNT I – FRAUDULENT TRANSFER
### (Against All Defendants)

27. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 26, inclusive, hereinabove set forth.

28. On June 19, 2018, and August 6, 2018, the Receivership Entities made the Transfers totaling $750,000 to Defendant, which were made with the intent to hinder, delay, or defraud creditors of the Receivership Entities. The Transfers were

made from the proceeds of the Ponzi scheme which were generated from investors in the scheme. Defendant received the Transfers either as the initial transferee, immediate transferee, or mediate transferee.

29. The Receivership Entities did not receive reasonably equivalent value from Defendant in exchange for the Transfers and to date have been paid only $12,545 by Defendant on account of the Transfers.

30. At the time that the Transfers were made to Defendant, the Receivership Entities were engaged in or about to engage in business transactions for which their remaining assets were unreasonably small in relation to the business or transaction.

31. The Receivership Entities were insolvent, or became insolvent, shortly after the Transfers were made to Defendant.

32. At the time that the Transfers were made to Defendant, the Receivership Entities intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they came due.

33. As a consequence, the Transfers were actual and constructively fraudulent transfers (or voidable transactions) under California's Uniform Voidable Transactions Act, California Civil Code section 3439, et seq., and $750,000 is subject to immediate disgorgement to the Receiver.

**PRAYER FOR RELIEF**

WHEREFORE, the Receiver prays for judgment against Defendants as follows:

1. For a judgment against Defendants, avoiding the Transfers;

2. For an order deeming the $737,546 paid to Defendants to be held in constructive trust for the benefit of the Receivership Entities;

1    3.   For an order directing Defendants to immediately pay $737,546, plus
2 prejudgment interest and costs, to the Receiver; and
3    4.   For such other and further relief as the Court may deem proper.

6 Dated: June 17, 2022                    ALLEN MATKINS LECK GAMBLE
                                          MALLORY & NATSIS LLP

                                          By:    */s/ Edward G. Fates*
                                                DAVID R. ZARO
                                                EDWARD G. FATES
                                                MATTHEW D. PHAM
                                                Attorneys for Plaintiff
                                                KRISTA FREITAG, Receiver